**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Wells Fargo Mortgage Lending Practices Litigation | : MDL No.: _____ <br> : <br> : |

**MEMORANDUM IN SUPPORT OF MOTION OF WELLS FARGO, N.A. UNDER 28 U.S.C. § 1407 TO TRANSFER FOR CONSOLIDATED AND COORDINATED PRETRIAL PROCEEDINGS**

I.  **INTRODUCTION**

Wells Fargo Home Mortgage, a division of Defendant Well Fargo Bank, N.A., provides residential mortgage loans to consumers throughout the nation and is one of the nation's leading originators and servicers of home mortgages. Within a four-month period, beginning in July 2007, four nationwide class actions were filed against Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") alleging discriminatory mortgage lending practices. The four actions name the same principal defendant, Wells Fargo Bank N.A., and each makes similar allegations of discriminatory lending. Additionally, each complaint seeks certification of overlapping nationwide classes, namely minority homeowners in the United States who claim to have been subjected to and harmed by allegedly discriminatory mortgage lending practices.

Because these actions share a common defendant and common allegations – including overlapping nationwide class allegations – the actions will benefit from coordinated pretrial proceedings. Discovery into class-related issues and discovery concerning Wells Fargo's mortgage lending business will be similar in all four actions and should be coordinated to maximize its effectiveness, while minimizing inconvenience and repetition. Coordinated pretrial proceedings will also ensure efficient motion practice and consistency of results, including on the core issue of class certification. The subject complaints seek certification of similar nationwide class actions, which should be decided once, not four times. Inconsistent results will be avoided on other issues as well, such as discovery issues and admissibility of evidence.

Wells Fargo therefore requests that the Panel transfer these actions to a single transferee district, either the Northern District of Illinois or, alternatively, the Southern District of Iowa. Multidistrict transfer to either of these districts will enhance the convenience of the parties, counsel and witnesses, and advance the just and efficient conduct of the actions. The Schedule of Actions is attached as Exhibit "A" in the accompanying Exhibit Volume.

**II.   BACKGROUND**

Plaintiffs in four separate actions in three different federal districts sued Wells Fargo, alleging that it engages in discriminatory lending practices. The division of Wells Fargo that engages in the residential mortgage business is Wells Fargo Home Mortgage, which is headquartered in Des Moines, Iowa, and is one of the nation's leading originators and servicers of residential mortgages. It provides funding for approximately one of every fifteen homes financed in the United States and currently services more than seven million customers nationwide. Wells Fargo Home Mortgage considers numerous factors in its determination of the price of a loan it offers to its customers. However, none of its lending practices are intended to or result in higher costing loans issued to minorities than to similarly situated non-minorities.

On July 30, 2007, the first of the four current putative class actions against Wells Fargo alleging discriminatory lending practices was filed in the United States District Court for the Northern District of California. (*See* Complaint in *Jeffries v. Wells Fargo*, Case No. 07-cv-3880 (N.D.Cal. 2007).) The *Jeffries* complaint alleges that plaintiffs were harmed by the allegedly discriminatory home financing policies and practices of Wells Fargo. Particularly, the complaint claims that in addition to using objective criteria (such as the individual's credit history, credit score, debt-to-income ratio and loan-to-value ratios) to determine the appropriate finance rate for the home mortgage, Wells Fargo also applies discretionary and subjective financing charges and interest mark-ups. The complaint further alleges that these discretionary factors result in black applicants having higher home mortgage prices than similarly situated non-black borrowers. Plaintiffs Nancy and Johnny Jeffries, both residents of Chicago, Illinois, aver that the alleged discriminatory lending practices violate the Equal Credit Opportunity Act (15 U.S.C. §§ 1691-1691f) ("ECOA") and the Fair Housing Act (42 U.S.C. §§ 3601-3619) ("FHA") both with respect to themselves and with respect to a proposed class comprising "all black homeowners (the 'Class') who obtained a Wells Fargo home mortgage loan in the United States between January 1, 2001 and the date of judgment in this action (the 'Class Period') and who were subjected to Wells Fargo's Discretionary Pricing Policy pursuant to which they paid discretionary points, fees or interest mark-ups in connection with their loan." See *Jeffries* Complaint at ¶10.

On August 21, 2007, a second, similar putative class action was filed, also in the Northern District of California and also by plaintiffs with no nexus to that district. (*See* Complaint in *Ventura v. Wells Fargo*, Case No. 07-cv-4309 (N.D.Cal. 2007).) The *Ventura* complaint makes nearly identical claims as the first *Jeffries* complaint. Specifically, Gilbert and Tracy Ventura, residents of Casa Grande, Arizona, allege that Wells Fargo engaged in discriminatory lending practices by authorizing and encouraging loan officers to employ discretionary fees and charges beyond the objective, risk-based variables in determining the

3

home mortgage financing. Like the *Jeffries* action, the *Ventura* action claims that the allegedly discriminatory practices of Wells Fargo violate the EOCA and the FHA. The *Ventura* complaint also asserts claims for violation the Civil Rights Act, Sections 1981 and 1982. Gilbert and Tracy Ventura bring all these claims on behalf of themselves and "all minority borrowers (the 'Class') who entered into residential mortgage loan contracts that were financed or purchased by Defendant Wells Fargo, and who were harmed by Defendant's discriminatory conduct." (*See Ventura* Complaint at ¶ 42.) On October 12, 2007, the *Ventura* case was ordered related to the *Jeffries* case. On December 18, 2007, an initial status conference was held in the two cases, and a schedule was set which contemplates a late 2009 trial date or dates. Discovery has not yet commenced in either action.

Shortly after the *Ventura* complaint was filed, another similar class action was filed against Wells Fargo in the Central District of California on October 18, 2007. (*See* Complaint in *Rodriguez v. Wells Fargo*, Case No. 07-cv-6780 (C.D.Cal. 2007).) Like the *Ventura* plaintiffs, Juan and Josefina Rodriguez, residents of Los Angeles, California, allege that Wells Fargo's residential mortgage practices violate the EOCA, the FHA and the Civil Rights Act, Sections 1981 and 1982. The *Rodriguez* plaintiffs sue on behalf of themselves and "all minority borrowers (the 'Class') who entered into residential mortgage loan contracts that were financed or purchased by Wells Fargo, and who were harmed by the discriminatory conduct of Wells Fargo." (*See Rodriguez* Complaint at ¶ 46.) The complaint has not been served, and Wells Fargo has not filed a responsive pleading.

Most recently, a few weeks after the *Rodriguez* complaint was filed, Judy Williams filed a class action complaint in the United States District Court for the Northern District of Illinois on November 8, 2007, purporting to represent herself and "all Minority persons in the United States who obtained a residential mortgage loan from Wells Fargo between January 1, 2001 and the present with less favorable terms at higher costs as a result of Wells Fargo's racially

discriminatory policies and/or practices." (*See* Complaint in *Williams v. Wells Fargo*, Case No. 07-cv-6342 (N.D.Ill. 2007) at ¶ 21.) Ms. Williams, who resides in Chicago, Illinois, brought the same claims as alleged in the *Ventura* and *Rodriguez* cases (and nearly identical to the claims found in the *Jeffries* complaint), namely, violations of the EOCA, the FHA and the Civil Rights Act, Sections 1981 and 1982. An initial status conference is currently scheduled for January 16, 2008.

As described above, the focus of all four complaints is Wells Fargo's home mortgage lending (as conducted by Wells Fargo Home Mortgage). All four actions allege a policy of subjective loan pricing by Wells Fargo, and all aim to certify a class of minority homeowners who had residential mortgage loans with Wells Fargo.

### III.   LEGAL ARGUMENT

Under Title 28, Section 1407 of the United States Code, consolidation for pretrial proceedings of civil actions "involving one or more common questions of fact" is appropriate where, as here, transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." The lawsuits listed in the attached Schedule of Actions make similar allegations against the same defendant, and plaintiffs in all the listed actions purport to represent overlapping nationwide classes of minority loan borrowers. Therefore, coordinating all of those actions under Section 1407 in one transferee district will serve the convenience of the parties and witnesses and promote the efficient and just conduct of litigation.

In requesting multidistrict transfer, Wells Fargo emphasizes that the ultimate resolution of these civil actions will raise issues unique to each plaintiff and to each alleged loan transaction, such that common issues will never predominate over individual issues in the sense

5

required for class certification under Federal Rule of Civil Procedure 23. Coordinated pretrial proceedings nevertheless will promote convenience and justice in pretrial proceedings, including on the issue of class certification. While Wells Fargo contends that resolution of these claims should not be undertaken in a class action setting, determination of the Rule 23 issues should be made in a single proceeding, not in multiple cases around the country.

As explained more fully below, the similarity of the allegations against Wells Fargo makes multidistrict treatment of these four cases both appropriate and worthwhile. Moreover, the most suitable transferee district for these actions is the Northern District of Illinois, which already has numerous MDLs involving mortgage lending and has proven itself both willing and able to take on such proceedings. In addition, plaintiffs in two of the four cases reside in Chicago (and have Chicago counsel), and Wells Fargo's residential mortgage business is based in the neighboring state of Iowa. An alternative is the Southern District of Iowa, which encompasses Well Fargo Home Mortgage's headquarters and principal place of business. Wells Fargo's employees with knowledge regarding electronically stored information are located in Des Moines and Minneapolis.

### A. Common Issues Shared Among The Scheduled Actions Favor Coordinated Discovery and Pretrial Proceedings Before One District Judge

This Panel has acknowledged that mortgage lending practices cases sharing one or more complex factual allegations may be appropriate for transfer to a single district judge for coordinated pretrial proceedings under Section 1407. *See, e.g., In re Community Bank of North Virginia Mortgage Lending Practices Litig.*, 368 F. Supp. 2d 1354, 135 (J.P.M.L. 2005) (ordering consolidation where four cases shared factual allegations that lenders conspired to include undisclosed fees and costs in residential mortgages); *In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 314 F. Supp. 2d 1376, 1378 (J.P.M.L. 2004) (consolidating nine cases that

shared factual questions arising out of allegations of unfair loan servicing and/or debt collection practices).

The four actions against Wells Fargo identified above present similar conditions. They make similar allegations against the same defendant regarding residential mortgage lending, and all plaintiffs purport to represent virtually the same nationwide class. To be sure, the ultimate resolution of each mortgage lending case will require examination of individualized issues, such as whether the loan officers in each individual plaintiff's case employed discretionary charges and whether Wells Fargo was responsible for any such cost increases. The complaints, however, start with similar allegations. And, in any event, this Panel has acknowledged that Section 1407 does not require "complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re Accutane Prods. Liab. Litig.*, 343 F. Supp. 2d 1382, 1383 (J.P.M.L. 2004). The common allegations against Wells Fargo, the common class and merits-based discovery that no doubt will occur, and the need to address pretrial issues such as class certification in a uniform manner make coordinated pretrial proceedings in one transferee district proper for these actions.

**B.    Multidistrict Litigation Before One District Judge Will Serve the Convenience Of The Parties And Witnesses**

When transfer of proceedings is, taken as a whole, convenient to the parties and the witnesses, the Panel will order consolidation. *In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F. Supp. 244, 254 (J.P.M.L. 1969). Where transfer would be convenient for some parties but inconvenient for other parties, the panel will use a balancing test to determine in a utilitarian fashion whether the overall convenience is enhanced. *In re Galveston, Texas Oil Well Platform Disaster*, 322 F. Supp. 1405, 1407 (J.P.M.L. 1971). Indeed, only some enhancement of the convenience of the parties and witnesses is sufficient to meet the requirements of Section

1407, and as long as there is some reduction in overall inconvenience, transfer is appropriate. *In re New York City Municipal Services Litigation*, 439 F. Supp. 267 (J.P.M.L. 1977).

Here, coordinated pretrial proceedings will promote convenience and efficiency. A key example is discovery, which has not yet begun in any of the actions. Wells Fargo anticipates that discovery will be required on issues related to class certification, and at some point plaintiffs will request documents, serve written discovery, and notice depositions of corporate witnesses located in Iowa regarding Wells Fargo's home mortgage business. The majority of documents relevant to plaintiffs' claims are located in Iowa, as are witnesses most knowledgeable about Wells Fargo Home Mortgage's electronically stored information. Pretrial coordination will permit discovery to occur in an organized and efficient fashion, supervised by a single judge and directed by lead counsel or a plaintiffs' steering committee. Class discovery could be conducted once; corporate depositions could be taken once on a schedule that meets the needs of all involved; and the need to produce similar sets of documents numerous times could be obviated. Motion practice also would be more convenient, as issues such as class certification could be briefed and heard once on a suitable schedule.

### C. Multidistrict Litigation Before One District Judge Will Promote Justice and Efficiency By Eliminating Duplicative Discovery and Inconsistent Pre-Trial Rulings

Centralization promotes efficiency where it eliminates duplicative discovery and avoids repetitive or inconsistent rulings. *In re New York City Municipal Securities Litig.*, 439 F. Supp. at 269 (transfer "necessary to prevent duplication of discovery, eliminate the possibility of conflicting pretrial rulings, and to conserve the efforts of the parties, the witnesses and the judiciary."). Of importance, the Panel has consistently held that "matters concerning class action certification should be included in the coordinated or consolidation pretrial proceedings in order to prevent inconsistent rulings and promote judicial efficiency." *In re Piper Aircraft Distribution*

*System Litig.*, 405 F. Supp 1402, 1403-1404 (J.P.M.L. 1975).  As the Panel has said, "[A] potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district court for coordinated or consolidated pretrial proceedings." *In re Multidistrict Private Civil Treble Damage Litigation Involving Plumbing Fixtures,* 308 F. Supp. 242, 243-44 (J.P.M.L. 1970).

Thus, in addition to promoting convenience, concentration of these actions will avoid inconsistent pretrial rulings on issues affecting multiple cases.  Class certification is, again, an issue on which rulings should be consistent, since plaintiffs in these four nationwide class actions purport to represent very similar and overlapping classes.  Although this is reason alone to handle these actions in multidistrict litigation, there are other issues on which pretrial ruling should be consistent.  There will be disagreements on discovery, which can be time consuming and expensive.  Those disputes should be resolved in a consistent manner so that the parties will labor under one set of rulings.  There also will be issues regarding the admissibility of evidence, including expert opinions.  Plaintiffs, for example, will attempt to pursue their discrimination claims using statistical methods that do not necessarily meet established evidentiary standards.  This also should be decided consistently across all the related cases.  In short, transferring these cases to one transferee district would accomplish precisely the consistency and economy of proceedings Section 1407 was meant to achieve.

### D.   These Cases Should Be Transferred To A Transferee District That Has The Capability And Technology To Manage Them And Favorable Docket Conditions

Various factors are relevant to determining the proper transferee district, including:  the location of witnesses, documents and other evidence; centrality and ease of accessibility of the transferee forum; familiarity of the transferee judge with the issues involved in the litigation; and docket conditions of potential transferee districts.  *See, e.g., In re Upjohn Co. Antibiotic*

"*Cleocin*" *Prods. Liab. Litig.*, 450 F. Supp. at 1171 (transferring actions to district nearest to location of witnesses and documents that would inevitably be involved in pretrial proceedings); *In re Educ. Testing Serv. Plt 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004) (choosing Eastern District of Louisiana as an "accessible, metropolitan location with favorable caseload conditions"); *In re Commer. Money Ctr., Inc. Equip. Lease Litig.* (2002, Jud Pan Mult Lit) 229 F Supp 2d 1379 (centralization of a multidistrict litigation in Northern District of Ohio permitted judicial panel to assign case to available transferee judge with successful experience in multidistrict litigation and court equipped to handle litigation).

As explained in more detail below, these factors lead to the following potential transferee districts: The Northern District of Illinois, the Southern District of Iowa, the Central District of California, the Northern District of California, and the District of Arizona. When considering all relevant factors, the most appropriate transferee districts are the Northern District of Illinois and, alternatively, the Southern District of Iowa.

        **1.**    **Districts Where Cases Are Currently Pending And Where District Judges Are Familiar With This Type Litigation**

There currently are cases pending in three potential transferee districts: the Northern District of California, the Central District of California, and the Northern District of Illinois. Among these districts, only the Northern District of Illinois currently has multidistrict litigation related to mortgage lending practices or the mortgage business and is therefore familiar with this type of litigation on multidistrict scale. District Judge Marvin Aspen in the Northern District of Illinois is currently presiding over 408 mortgage lending practices actions in *In re Ameriquest Mortgage Lending Practices Litigation*, MDL No. 1715. In addition, District Judge Charles Norgle is presiding over 70 actions in *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, MDL No. 1604, and District Judge James Zagel presides over *In re Mortgage Escrow*

*Deposit Litigation*, MDL No. 899. Neither the Northern District of California nor the Central District of California has MDLs relating to mortgage practices.

Although two of the four listed actions are pending in the Northern District of California, the actions have no actual connection to that forum, other than the location of some of the involved attorneys. None of the plaintiffs in the Northern District of California actions reside in California – Mr. and Mrs. Jeffries reside in Chicago and Mr. and Mrs. Ventura reside in Arizona – and none of the alleged loan transactions occurred within the Northern District of California. Despite plaintiffs' allegations, Wells Fargo's residential mortgage business is not based in San Francisco. It is based in Des Moines, Iowa.

### 2. Districts Where Witnesses And Documents Are Located

The Southern District of Iowa and the Northern District of Illinois stand out because of their proximity to Wells Fargo's principal place of business and to two of the four plaintiff's home states. *See In re Upjohn Co. Antibiotic "Cleocin" Prods. Liab. Litig.*, 450 F. Supp. at 1171 (a transferee district near documents and witnesses central to the litigation increases the efficiency of MDL proceedings); *see also In re Human Tissue Prods. Liab. Litig.*, 435 F. Supp. 2d 1352, 1354 (J.P.M.L. 2006) (selecting District of New Jersey because defendants' headquarters, relevant documents, and witnesses located there). Because Wells Fargo Home Mortgage is headquartered in Des Moines, documents and party witnesses that plaintiffs will seek are located in that locale and the surrounding area. Moreover, two of the four loans that are the subject of the actions were transacted in Chicago, and Wells Fargo anticipates that witnesses

and documents will be located in and around that locale as well. Plaintiffs alleging injury arising from these Chicago-based loans have already retained Chicago counsel,[1] as has Wells Fargo.

In addition to the Northern District of Illinois and the Southern District of Iowa, the pending cases involve plaintiffs residing in Los Angeles and Casa Grande, Arizona, where potential witnesses and documents presumably exist. The Central District of California and the District of Arizona are therefore also potential transferee districts. Neither of these districts, however, is proximate to Wells Fargo Home Mortgage's principal place of business.

### 3. Districts That Are Easily Accessible And Have Favorable Docket Conditions

Among the five districts specifically identified above, all are easily accessible, but the Northern District of Illinois currently has the most favorable docket conditions, measured by median time from filing to disposition and lowest number of actions per judge.[2] Moreover, the Northern District of Illinois has significant and recent experience in managing multidistrict litigation related to mortgage lending. Alternatively, the Southern District of Iowa is an accessible forum that has experience in handling MDLs and also has favorable docket conditions.[3]

---

[1] Ms. Williams has retained the Chicago law firm of Robert Allison & Associates, and Mr. and Mrs. Jeffries have retained the Chicago law firm of Miller Law, LLC.

[2] As of November 6, 2007, the Northern District of Illinois had 15 MDLs with 672 active cases. *See* Judicial Panel on Multidistrict Litigation, MDL Information, Pending MDL Dockets by District, http://www.jpml.uscourts.gov/MDL_Information/PendingMDL-November-07.pdf (last visited December 26, 2007). In addition, in 2006, the Northern District's Median time from filing to disposition was 6.5 months. Moreover, in 2006, each judge in the Northern District of Illinois presided over 330 civil cases. *See* Judicial Panel of Multidistrict Litigation, Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited December 26, 2007).

[3] As of November 6, 2007, the Southern District of Iowa had one MDL with 23 active cases.
Continued on following page

While the Northern District of California currently has two of the four Wells Fargo actions, as explained above, that grouping only exists because of plaintiffs' counsel's choice of forum. No plaintiff resides in the Northern District of California, and none of the transactions at issue in the two cases occurred in that District. In addition, docket conditions in the Northern District of California are currently not as favorable as in the Northern District of Illinois.[4] The same is true for the Central District of California[5] and the District of Arizona.[6]

---

Continued from previous page

See Judicial Panel on Multidistrict Litigation, MDL Information, Pending MDL Dockets by District, http://www.jpml.uscourts.gov/MDL_Information/PendingMDL-November-07.pdf (last visited December 26, 2007). In addition, in 2006, the Southern District of Iowa's Median time from filing to disposition was 10.4 months. Moreover, in 2006, each judge in the Northern District of Illinois presided over 282 civil cases. See Judicial Panel of Multidistrict Litigation, Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited December 26, 2007).

[4] As of November 6, 2007, the Northern District of California had 18 MDLs with 2,285 active cases. See Judicial Panel on Multidistrict Litigation, MDL Information, Pending MDL Dockets by District, http://www.jpml.uscourts.gov/MDL_Information/PendingMDL-November-07.pdf (last visited December 26, 2007). In addition, in 2006, the Northern District of California's Median time from filing to disposition was 7.4 months. Moreover, in 2006, each judge in the Northern District of California presided over 558 civil cases. See Judicial Panel of Multidistrict Litigation, Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited December 26, 2007).

[5] As of November 6, 2007, the Central District of California had 10 MDLs with 124 active cases. See Judicial Panel on Multidistrict Litigation, MDL Information, Pending MDL Dockets by District, http://www.jpml.uscourts.gov/MDL_Information/PendingMDL-November-07.pdf (last visited December 26, 2007). In addition, in 2006, the Central District of California's Median time from filing to disposition was 7.2 months. Moreover, in 2006, each judge in the Central District of California presided over 397 civil cases. See Judicial Panel of Multidistrict Litigation, Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited December 26, 2007).

[6] As of November 6, 2007, the District of Arizona had 1 MDL with 4 active cases. See Judicial Panel on Multidistrict Litigation, MDL Information, Pending MDL Dockets by District, http://www.jpml.uscourts.gov/MDL_Information/PendingMDL-November-07.pdf (last visited December 26, 2007). In addition, in 2006, the District of Arizona's Median time from filing to disposition was 11.8 months. Moreover, in 2006, each judge in the District of Arizona presided over 336 civil cases. See Judicial Panel of Multidistrict Litigation, Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited December 26, 2007).

4.  **The Northern District Of Illinois Is The Most Appropriate Transferee District**

In the final analysis, the relevant factors weigh in favor of transfer to the Northern District of Illinois. That district has current and significant experience with multidistrict litigation involving the mortgage lending business, and its favorable docket conditions suggest that it has the capacity to accept another such proceeding. Moreover, one of the actions is already pending there, and plaintiffs in two of the four actions reside in Chicago. Finally, Wells Fargo Home Mortgage is headquartered and has its principal place of business in the neighboring state of Iowa. No other district shares this combination of attributes, although an alternative is the Southern District of Iowa, which is where Wells Fargo Home Mortgage is based.

Two of the four actions are currently pending in the Northern District of California. But as mentioned above, neither has any identifiable connection to that forum, other than the location of counsel. And even on that count, plaintiffs in one of the cases, *Jeffries v. Wells Fargo*, have already retained Chicago lawyers who have appeared on their behalf. By comparison to other potential transferee districts, the Northern District of Illinois is the most appropriate for these cases.

## IV   CONCLUSION

For the reasons stated above, Wells Fargo requests that the Panel transfer the cases listed on the attached Schedule of Actions to a single transferee district court for coordinated pretrial

proceedings. Applying factors relevant under Section 1407, the most appropriate transferee district is the Northern District of Illinois or, alternatively, the Southern District of Iowa.

Dated: January 3, 2008

        David Z. Smith
        REED SMITH SACHNOFF & WEAVER
        10 South Wacker Drive
        40th Floor
        Chicago, Illinois 60606-7507
        (312) 207 1000
        (312) 207 6400 facsimile

        REED SMITH LLP

        _/s/ Robert D. Phillips, Jr._
        Robert D. Phillips, Jr.
        Two Embarcadero Center
        Suite 2000
        San Francisco, California 94111
        (415) 543-8700
        (415) 391-8269 facsimile

        Attorneys for Defendant Wells Fargo Bank, N.A